IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURICE BERNARD STEWART, JR.        *
      Plaintiff
                                           *

   v.                                                                          Civil Action No. JFM-05-1899
                                           *

DR. JOHNSON, et al.,
      Defendants                          *
                                  ******

## **MEMORANDUM**

On July 12, 2005, plaintiff filed the above civil rights action pursuant to 42 U.S.C. §1983.[1] Paper No. 1. Counsel for defendants Odili, Pendleton, Riddick-Lane, Daly, Moore-Daly, and Hasan filed Motions to Dismiss. Paper Nos. 30 and 32. Counsel for defendant Johnson filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper No. 36. Plaintiff has responded (Paper No. 44) and defendants have replied. Paper Nos. 45, 46, and 48. No hearing is needed to resolve the pending dispositive motions.[2] *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, the dispositive motions, treated as motions for summary judgment, shall be granted.

### **1. Factual Background**

---

[1] To the extent the complaint could be construed as raising state law claims, the court would decline to exercise supplemental jurisdiction. *See* 28 U.S.C. §1367(c)(3); *United Mine Workers v. Gibbs,* 383 U. S. 715, 726 (1966).

[2] Plaintiff filed a motion for appointment of counsel (Paper No. 43). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). The court finds from its review of the complaint and pending motions that plaintiff is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty. Moreover, the court concludes that plaintiff's complaint is not of undue complexity. Accordingly, the motion shall be denied.

     Plaintiff has also filed a motion for preliminary injunction (Paper No. 29) which he subsequently sought to withdraw (Paper No. 40), indicating that the relief he requested was granted. According the motion for preliminary injunction shall be denied as moot.

Plaintiff states that on or about January 31, 2005, an on-site consultation was ordered by Dr. Cherelle Riddick-Lane regarding a lump on plaintiff's upper back.  On February 18, 2005, Dr. Johnson, the "in-house surgeon" removed the lump from plaintiff's back.  Dr. Johnson advised plaintiff at that time that the lump was " a solid mass," that he could not determine anything else regarding the lump, and that a specimen would be sent to a laboratory for further testing. Plaintiff states that Dr. Johnson advised him that he would be informed of the diagnoses by Dr. Johnson and Dr. Riddick-Lane.   Thereafter Plaintiff states that he was seen by Dr. Lane who advised him that "after speaking to the surgeon Dr. Johnson and both of them had a chance to review the lab. Results that they had determined that the lump taken from my back was a benighn tumor which is non-life threatening." [sic].  Plaintiff states he was advised that the tumor was negative for any type of cancer.  Paper No. 1.

At an unspecified time thereafter, plaintiff requested to review his own medical records. He then saw that "several doctors at GenPath Laboratory and Mount Sinai Medical Facility has concurred that after testing the lump samples from my back that it is some form most likely malignant cancer."  Plaintiff states that Dr. Lane lied to him concerning his diagnosis and she and Dr. Johnson failed to provide proper treatment for his medical condition. In further support of his claim, Plaintiff alleges a conspiracy among all health care workers at MCAC to deprive him of care. He states that Nurses Daly, Moore-Daily, Hasan, and Odeli have all treated plaintiff at various times and none of them discussed his condition with him. *Id*. On September 18, 2005, plaintiff filed an amended complaint alleging that Barbara Pendleton refused to turn over copies of his requested medical records.  Paper No. 8.

## 2. Standard of review

**A.     Motion to Dismiss**

"A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U. S. 69, 73 (1989) *(citing Conley v. Gibson*, 355 U. S. 41, 45-46 (1957)). "While §1983 complaints that recite bare legal conclusions that are 'wholly devoid of facts' or that are not supported by specific facts pleaded, may warrant dismissal, conclusory legal assertions that are supported by the pleaded facts - even if the factual assertions are equally consistent with a contrary conclusion - should survive a Rule 12(b)(6) motion to dismiss." *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989) (citations omitted). "In considering a motion to dismiss, the complaint must be construed in the light most favorable to the plaintiffs, and its allegations taken as true." *Finlator v. Powers*, 902 F.2d 1158, 1160 (4th Cir. 1990) *(citing Jenkins v. McKeithen*, 395 U. S. 411 (1969)).

**B.     Summary Judgment**

"[S]ummary judgment should be granted in those cases in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." *Haavistola v. Community Fire Co. of Rising Sun*, 6 F.3d 211, 214 (4th Cir. 1993) (citations omitted). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*,

3

477 U. S. 242, 247-48 (1986) (emphasis in original).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", summary judgment is appropriate.  *Celotex Corp. v. Catrett*, 477 U. S. 317, 322 (1986).  "In ruling on a motion for summary judgment, a court must believe the evidence of the non-movant, and all justifiable inferences must be drawn in the non-movant's favor."  *Estate of Kimmell v. Seven Up Bottling Co.*, 993 F.2d 410, 412 (4th Cir. 1993) (citation omitted).

### 3. Analysis

**A.    PLRA Exhaustion**

The court first examines defendants Odili and Johnson's contention that this action should be dismissed in its entirety due to plaintiff's failure to exhaust available administrative remedies.  The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Thus, the exhaustion provision plainly extends to plaintiff's allegations.  His claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense.

4

*See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D.Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *See Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D.Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir.) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the ARP process provided by the Division of Correction to its prisoners. If this request is denied, a prisoner has ten calendar days to file an appeal with the Commission of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office. *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

Plaintiff avers that he filed an administrative remedy, "but it was disregarded and [he] never received a response." Paper No. 1. He also states that he filed an appeal of the administrative remedy which was also disregarded and that his mail has been tampered with. *Id.* Defendants offer no evidence to contradict plaintiff's claims regarding his efforts to exhaust his administrative

5

remedies. Given the information before the court, the court cannot say that plaintiff did not exhaust his "available" remedies or that correctional employees did not frustrate his efforts at exhausting same. *See Taylor v. Barnett*, 105 F.Supp.2d 483, 486 (E.D. Va. 2000).

**B.      Eighth Amendment**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that objectively the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v.*

*Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.  If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown,* 240 F. 3d at 390.

The undisputed medical records reveal that plaintiff began complaining of pain in his upper back on August 2, 2004, when he presented to sick call. He stated that a boil on his back had become painful over the prior two weeks. Paper No. 30., Ex B, No. 010063. Dr. Riddick-Lane diagnosed the mass on plaintiff's back as an infected cyst and prescribed antibiotics. Paper No. 32, Ex. 1 at 1. After examining plaintiff and concluding that the "cyst" had not responded to the antibiotics, Dr. Riddick-Lane ordered a surgical consultation on August 27, 2004. No. 32, Ex. 1 at 2; Paper No. 30, Ex. B at 010064.  She examined plaintiff twice thereafter. Paper No. 32, Ex. 1 at 4-5.

Plaintiff was examined by Dr. Johnson on January 21, 2005, Paper No. 32, Ex. 2 at 15.  A surgical procedure to excise the mass from plaintiff's back was performed on February 18, 2005 by Dr. Johnson. *Id.* at 18; Paper No. 30, Ex. B at 010073. Tissue samples of the mass were submitted to pathology for review. *Id.* On February 26, 2005, Nurse Odili removed plaintiff's sutures. Paper No. 30, Ex. B at 010074.  Dr. Johnson discharged plaintiff from further surgical care after an examination on March 4, 2005. Paper No. 32, Ex. 2 at 19.

On March 2, 2005, the pathologist who interpreted the tissue samples diagnosed the mass

7

as a fibrohistiocytic neoplasm. Paper No. 30, Ex. B at 010117-118. Several addenda to the report concluded that the mass was "a potentially malignant soft tissue neoplasm"... "consistent with [a] solitary fibrous tumor." On March 28, 2005, Dr. Riddick-Lane discussed the pathology findings as of that date with plaintiff. *Id*., at 010078. A final notation on April 14, 2005, indicated that "These features are suggestive of a more aggressive course, although it is a well known fact that the precise clinical behavior is difficult to predict in this type of tumor." *Id*. at 010121-125. Contrary to plaintiff's assertions and averments, there was no definitive diagnosis of malignancy on the pathology report. Additionally, Dr. Johnson avers that the significance of the findings of the pathology report were unknown to him and he suggested that Dr. Riddick-Lane consult with a specialist. Paper No. 36, Affidavit of Johnson.

Plaintiff continued complaining of pain at the cite of the excision and on June 17, 2005, Dr. Riddick-Lane requested an off-site oncology consultation to rule out metastatic disease. Paper No. 32, Ex. 1 at 9, Ex. 4 at 29. Plaintiff was examined by Dr. Sausville, an oncologist with the University of Maryland Medical System ("UMMS"), who requested that plaintiff be seen by Dr. Garofalo, a radiologist/oncologist for a determination as to whether the excision bed should be treated with radiation. Paper No. 32, Ex.4 at 33. Additionally CT scans with contrast were performed on plaintiff's neck, chest, abdomen, and pelvis. MRI studies with contrast were performed on plaintiff's cervical, thoracic and lumbar spine. Plaintiff also underwent PET scans of the abdomen, pelvis, chest and whole body. Paper No. 32, Ex. 5 at 39-49. The tests ultimately were negative as to the existence of metastatic disease. *Id*. Dr. Riddick-Lane consulted with Dr. Sausville and they jointly cancelled a plan to biopsy a non-specific sub-clavicular nodule that appeared on one of the scans and to disregard Dr. Garofalo's recommendation for prescription pain medication for plaintiff.

Dr. Riddick-Lane, in consultation with the oncologist and with the benefit of all scans having been completed, decided to monitor plaintiff every few months for evidence of metastatic disease and not order any other treatment at that time due to the lack of indicia of metastatic disease and the "debatable" pathology of plaintiff's original tissue specimen.  Paper No. 32, Ex. 1 at 14,  Paper No. 30, Ex. B at 010029.

Under these facts, there is no objective evidence to show that the care plaintiff received was inappropriate.  His allegation that his condition was hidden from him is not supported by the record which demonstrates not only that Dr. Riddick-Lane discussed his diagnosis with him but that Barbara Pendleton provided him access his all of his medical records. Moreover, the medical records reveal that the pathology report was not conclusive.  In light of the pathology report and plaintiff's continued subjective complaints, Dr. Riddick-Lane referred plaintiff for further specialized evaluation.  Plaintiff's complaints were considered and  his treating physician moved in appropriate fashion to have him examined by outside medical experts.  Any disagreement with the length of time for the health care providers to determine that further examinations were warranted or the length of time to have such evaluations performed does not state a cognizable constitutional claim.  *See Peterson v. Davis*, 551 F.Supp. 137, 146 (D.Md. 1982), *aff'd* 729 F.2d 1453 (4th Cir. 1984).  It appears from the record before the court that the pathology report from the initial tissue sample did not conclusively demonstrate whether the sample was benign or malignant:  thus, further diagnostic testing and evaluation were ordered to determine whether plaintiff suffered from metastatic disease.  To the extent plaintiff takes issue with the denial of Dr. Garofalo's  recommendation to biopsy the nodule which appeared in plaintiff's sub-clavicular area and to prescribe plaintiff pain medication, recommendations which were ultimately rejected by plaintiff's treating physician and consulting

9

oncologist, such disagreements between medical professionals would not rise to the level of deliberate indifference. *See Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977). Dr. Riddick-Lane and Dr. Sausville had the benefit of complete diagnostic testing in determining plaintiff's treatment protocol. The plaintiff presents no evidence demonstrating that defendants in any way disregarded a substantial risk to his health. It appears to the court that plaintiff merely disagrees with the course of treatment he received for his complaints. However, such disagreement does not provide the framework for a federal complaint under 42 U.S.C. § 1983. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). The court simply cannot find from the uncontroverted medical records before it that the medical care received by plaintiff was so egregious as to constitute an Eighth Amendment violation. In light of the foregoing, it is clear that plaintiff has failed to establish deliberate indifference on the part of defendants. Summary judgment is therefore granted in favor of defendants.

**C.     Access to Medical Records**

Plaintiff claims that Barbara Pendleton denied him access to his medical files. Pendleton avers that she has provided plaintiff copies of all requested medical records. Paper No. 32, Affidavit Pendleton and Ex. A and B. Prisoners do not retain a general constitutional right of access to their files. *See Paine v. Baker*, 595 F.2d 197 (4th Cir. 1979). Moreover, the record before the court reveals that not only did plaintiff receive full access to his medical records, but that in responding to his complaint defendants have provided plaintiff with copies of all exhibits filed in this case. Accordingly, Barbara Pendleton is entitled to summary judgment on this claim.

**D.     Injunctive relief**

Finally, plaintiff has sought injunctive relief wherein he seeks to be taken to an off-site

facility to be tested for HIV. Paper No. 42. For guidance as to the legal standard to apply in considering an application for injunctive relief, the Court relies on the Fourth Circuit ruling of *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977), which holds that injunctive relief may only be granted if the movant can demonstrate: (i) the likelihood he will be irreparably harmed if the preliminary injunction is denied; (ii) the likelihood that defendant will not be harmed if the requested relief is granted; (iii) the likelihood that he will succeed on the merits; and (iv) the public interest will be served if the injunction is granted. *Blackwelder*, 550 F.2d at 195-96; *see also Ciena Corp. v. Jarrard*, 203 F.3d 312, 322-23 (4th Cir. 2000). The initial factor to be examined in the aforementioned analysis is the "likelihood of irreparable harm to the plaintiff." Indeed, the failure to make a **clear showing** of irreparable harm is, by itself, a ground upon which to deny a preliminary injunction. *See Direx Israel, Ltd. v. Breakthrough Medical Corporation*, 952 F.2d 802, 812 (4th Cir. 1992.)   Defendants have documented that plaintiff has already been provided an HIV test and has tested negative. Paper No.46, Ex. 6. Accordingly, plaintiff's request for injunctive relief is moot and shall be denied.

**E.     Service of Process**

Defendants Odili and Johnson argue that plaintiff's complaint against them should be dismissed for improper service of process. Paper Nos. 30 and 36. Plaintiff, a pro se incarcerated individual, complied with all requirements of this court in utilizing the United States Marshal Service to effect process on defendants and therefore should not be penalized for any deficiency in same. Moreover, it appears that defendants Odili and Johnson are employees of Correctional Medical Services, Inc., who is a signatory to the standing order concerning streamlined service of process on behalf of the corporate entity and its employees. *See In re: State Prisoner Litigation*,

Misc. No. 00-308, Administrative Order 2002-1. For these reasons, and because defendants are entitled to summary judgment as to plaintiff's claims, the motion to dismiss shall be denied.

## **Conclusion**

For the reason stated above a separate order shall be entered granting defendants' motion for summary judgment, entering judgment in favor of all defendants and against plaintiff, and denying plaintiff's motion for appointment of counsel and request for injunctive relief.


<u>August 24, 2006</u>                                            <u>/s/                                         </u>
Date                                                                   J. Frederick Motz
                                                                            United States District Judge